We'll hear argument first this morning in Case 16-6795, Ayestas v. Davis. Mr. Kowarski. Mr. Chief Justice, and may it please the Court, 18 U.S.C. Section 3599 entitles indigent inmates facing the death penalty to reasonably necessary services. And services are reasonably necessary when they would be used to identify or develop possible claims by a reasonable attorney representing a paying client of ordinary means. But in the Fifth Circuit, the standard is higher. Inmates must show necessity that is not just reasonable, but that is substantial. As a result, courts in the Fifth Circuit and the Fifth Circuit alone are permitted to probe deeply into the merits and procedural viability of as-yet-undeveloped claims that the requested services might support. Roberts. Why would a reasonable attorney with finite means to spend spend them on the research into the facts, as you propose, when he won't be able to submit those facts to the Court under 2254e2? Mr. Chief Justice, I actually think that the inmate will be able to submit those facts under 2254e2, and I also think that there are reasons why a reasonable attorney might pursue evidence notwithstanding the inability to introduce that evidence at an e2 hearing to prove the underlying constitutional violation. Well, if he is ever able to submit under e2, it would be because it's a new rule of constitutional law, I'm just looking at the statute here, or a factual predicate that could not have been previously discovered. And if it could not have been previously discovered, it seems to me you won't be able to make a case of ineffective assistance of counsel. It's not ineffective if he couldn't have discovered it. Mr. Chief Justice, you're looking at the two subsections under e2. We actually drop out of the e2 analysis because the inmate didn't, quote, unquote, fail to develop the claim within the opening clause. So the Court would never even reach the analysis in the two subsections that you're using. Well, I would have thought he did fail to develop it. You just have an excuse, I guess, a reason why he shouldn't be faulted in your view, and that's because of the ineffective assistance of counsel. And you plan to make that case by submitting the new evidence that you want the funds to uncover. And this says that you can't do that. We – he did not fail to develop the evidence in State court. And Williams v. Taylor, the Court says that's not a no-fault phrasing that failed to do that. This issue was not aired at all below, was it? No. So you think it will be available on remand? The issue should be available to the Fifth Circuit on remand, although the Fifth Circuit has, you know, encountered this on a number of occasions and has refused to adopt the Director's interpretation. In fact, a number of States have pressed the Director's interpretation and a number of different courts of appeals, and not a single jurisdiction anywhere adopts it. So the idea of press – Is there a Fifth Circuit decision? You say you've encountered this in the Fifth Circuit. Is there a Fifth Circuit decision that rules on this? The Fifth Circuit decision that's most on point is Canales v. Quarterman or Canales v. Thaler. Canales is the first name of the case. And in that case, it says in a footnote, the Director asks us to take this step, and we're not going to do that. But it sounds to me like that's – we're not – as you suggest we should do here, is you're not going to reach it and make a ruling on it. Yes, exactly. I don't mean to suggest they've heard the issue and decided that it's non-meritorious. It's just that the Director's made that case to the Fifth Circuit, and that is not the law in the Fifth Circuit. It's not, you know, the basis of a judgment below. It's not a bar that we'll encounter unless the Fifth Circuit decides to make new law. Could I ask you a question about the jurisdictional issue that your adversary has raised? Do you think that appellate courts have jurisdiction over disputes about the amount of funding? In certain circumstances, yes. And what would those circumstances be? If the amount of funding interferes with the representation. So to – So any time there's a – the attorney is dissatisfied with the amount of funding, I assume that would mean that there could be an appeal. No, Justice Alito. If, for example, if an attorney comes in after the case is concluded and asks for attorney's fees or something like that, then maybe there's a discussion to be had about whether that's appealable. But when you're asking for resources in the midst of litigating a case or controversy, that's bound up with the case or controversy. Well, that was the situation I had in mind. So the attorney asks for $20,000 to investigate, and the Court grants $5,000 to investigate. There could be an appeal about that. Yes. I mean, if the determination is based on an evaluation of reasonable necessity. I thought the statute said that for any request exceeding $7,500, there has to be approval of a circuit court judge. Justice Ginsburg, for any granted amount over $7,500, then there has to be a finding that those services are not only reasonably necessary, but that they are for an unusual character or duration. And then the Chief Justice, assuming the Chief Judge of the Fifth Circuit or his delegee will review the question of whether it's for an unusual character or duration. The reasonable necessity determination is not reviewed by a judge. It's reviewed by a court. I mean, what are the consequences? We're not talking about how much. We're just talking about whether there is access at all to funds to investigate. Yes. I suppose in a situation where an inmate asks for an amount that exceeds $7,500, the question might get presented because the Chief Judge writes it down to $7,500, but that's not this case. The basis of the lower court's decision in this case is just that the funds are not reasonably necessary, the services are not reasonably necessary. Alito, one other jurisdictional question. Is it true that the Director of the Administrative Office of the Courts can, under some circumstances, review a funding grant? And if that is so, how can the funding grant be the exercise of judicial power? That's not accurate, Justice Alito. So the cases that are recited in the Respondent's Brief are cases about the AO's authority under the CJA, not under Section 3599. Those are distinct statutes. Of course, the CJA governs in all non-capital cases, and 3599 governs in capital cases, and there's no authority in 3599 for the AO to do that. And you'll notice that all of the cases that are recited in the Respondent's Brief, none of those scenarios recited there have anything to do with 3599. Breyer, looking at the cases, my impression was that if, say, the defendant asked for $15,000 and the court gave $10,000 or maybe $20,000, whatever it is, or one side or the other disagrees with that, they can't appeal. I mean, they can appeal. It's like an administrative law. Of course they can appeal. You can always appeal, but you're going to lose because the statute is read by various courts, I think correctly, as giving very broad discretion to the trial court to decide how much. It's just like they want to call a witness or something. I mean, you say this witness is irrelevant. Well, the judge says I'm calling him. You can appeal, ask for mandamus or something, you're going to lose, because it's up to the court. And isn't that the same here, and shouldn't it be the same? So, first, I don't – I think it's true that there is – that the district courts have enormous discretion to determine the award. I don't necessarily mean – know that that means that there wouldn't be jurisdiction. Breyer, it doesn't. I'm saying it doesn't mean that. Right. It's just like any other situation where a trial court has to run his trial. He has broad discretion over many areas, and that should be the same here. Yes. I mean, and in fact, that's – these decisions are reviewable for an abuse of discretion. And so there's extraordinary latitude in the district court to make these decisions. So there's no need to, you know, worry about whether there's a jurisdictional basis, because oftentimes what the district court does is going to carry the day. Now, there are – I'm sorry. Do you believe that the statute can be read to mean that a district court, even if it finds reasonable necessity, that it has the authority not to award fees? I think there are certainly extenuating circumstances where the statute suggests that could happen. And what would those be, and what if a judge exercises that discretion improperly? Okay. So before I answer that, I just want to be clear. That's not the case that we have here. The case that's decided here is reasonable necessity. Now, so for example, if there's some indication of gamesmanship on the part of Federal Habeas Counsel, the resources are reasonably necessary at this point in the litigation, because Federal Habeas Counsel has decided not to pursue them at some earlier point when he or she should have. Or as in – as is the case in Texas, sometimes if there's a new claim discovered on Federal Habeas Review and the Federal Habeas lawyer has to take it back to State court, the State court will pay for that litigation. And so the Federal Habeas – sometimes the Federal courts will say, we're not going to write this check until we know whether the State courts are going to write the  So this is the case that we have here. The things – the examples that you just gave to Sotomayor, is that why you think the word may is in the statute? What is the effect of that word? What is it covering, and what discretion does it allow? Those are example – may is basically an escape hatch that allows a court to decline to award services under extenuating circumstances like the circumstances I just described. The other work that may does in the statute is affirm that review is for abuse of discretion, because when may is added to the statute, it's denominated as a technical amendment, which means that it is an amendment designed to conform the statute to what existing practice is. And so the idea is just that what the may is doing is clarifying what was already happening in the courts of appeal, which is to say that they review for abuse of discretion. So you believe it's appealable, but under an abuse of discretion standard? It's appealable under an abuse of discretion standard, but as long as it's bound up with the case or controversy, as long as it's affecting the quality of the representation, then it's appealable. It's not like an order refusing licensure. It's not like, as I mentioned in Respondent's brief, a decision by a judge or justice to hire a clerk. Now, maybe the closer question is when an attorney comes in after the case is over on a separate docket number and asks for compensation, and a court doesn't want to award that, because that decision, the attorney's fee decision after the case is finished, doesn't actually interfere with the representation. So you can make an argument that it's not part of the case or controversy. But as long as the decision under 3599 about resources affects the representation, then it's appealable. Justice Ginsburg. Ginsburg. Ginsburg. Ginsburg. Can we get back to what is the question here? I think you agree that the district court, as you said in your brief, may satisfy itself that a defendant may have a plausible claim or defense before granting the funds. So the plausible claim is a standard that a district court can require counsel to meet. This Court has used different formulations for referring to the obligations of Federal habeas counsel. In McFarland v. Scott, it says that the representation is designed to allow counsel to identify and develop possible claims. In McCleskey v. Zant, the way it's characterized is all relevant claims. The dissent in McCleskey calls it all conceivable claims. I don't necessarily want to get caught up in, you know, is it plausible, is it conceivable, is it relevant. The most on-point authority uses the phrase possible claims, and that's from McFarland v. Scott. The representation has to be capable of allowing trial counsel to perform that function. Alito, what do you think? Alito, I would think the most relevant language is the language of the statute, reasonably necessary. And I really struggled with that and also with the phrase substantial need, but taking reasonably necessary. If it just said necessary, that would be a pretty tough standard. Would you accept the interpretation of reasonably necessary to mean that this is something that a reasonable attorney would think is necessary? That the reasonable attorney standard and a reasonable attorney representing a client of finite means is the standard that we think is appropriate. And it's actually the way they interpreted the word necessary. Necessary is the word that appears in the CJA, and they interpret necessary to mean reasonably necessary under the CJA. And every single court of appeals, with the exception of the D.C. Circuit, which does basically the same thing, interprets reasonably necessary to mean a reasonable attorney representing a client of finite means. Kagan. And the finite means business is just to make sure that, like, a reasonable attorney for Bill Gates would scour the earth and not care about it. Exactly. Or, you know, the standard doesn't involve a richy-rich client or something like that. But the attorney, the reasonable attorney, still has to think that it is necessary, which is pretty tough. Well, the standard that Congress uses. It doesn't mean necessary. We assume. It's like the necessary and proper clause. It doesn't mean that it's really necessary. Right. We know what Congress was thinking when it used the phrase reasonably necessary. You really know what they were thinking? Well, Congress plucked that phrase directly from the case law that was interpreting the word necessary in the CJA. And it's not a particularly close question in the courts of appeal about what the word necessary meant. At the time that Congress wrote the statute, necessary meant reasonably necessary, and reasonably necessary meant the reasonable attorney rule that I described at the top of my opening. Okay. What is the difference between reasonably necessary and substantial need? I have been racking my brain trying to think of something that it is reasonably necessary for me to obtain, but as to which I do not have a substantial need. And I can't think of an example. Maybe you can give me an example. So, Justice Alito, I'm going to scrap the formal labels from it. I'm not going to use substantial need or reasonably necessary. No, don't do that, because one is the statutory language and the other is the language that's used by the Fifth Circuit. And that's what we have to deal with, no matter what the various courts of appeals have said about this. I'm just trying to answer the question functionally. Okay. All right. So, of course, a court can decide a 3599 motion by reference to a merits or procedural issue. It's just that the referenced issue can't be intertwined with the evidence that the inmate is seeking in the motion. So take the following example. A claim has two elements, element A and element B. And the record is fully developed with respect to element A. And the record is not going to get any better with respect to element A. And the inmate comes to court under 3599 and asks for resources to develop element B. A court can decide the 3599 motion by reference to the merits if what it's doing is saying that your evidence on element A is never going to be good enough. And we know that because the record there is fully developed. What the court cannot do and what the Fifth Circuit regularly does under substantial need rule is say, oh, we're going to guess about what the record on B looks like. We're going to speculate about what you're going to find when you go out and you look for this mitigation evidence or this evidence of materiality. And we're going to guess based on that estimation that you're not going to meet that showing on element B. So that's the difference between reasonable necessity, which looks at what a reasonable lawyer would do, and the substantial need rule is operationalized by courts in the Fifth Circuit. If I could. But when you're talking about facts, and this is the point you make in your brief, how do you know that the record is fully developed under issue A? The lawyer can come in and say, well, if we have another investigator and could look further at this, we're going to develop some more facts. I mean, it – I'm not sure that that's a valid distinction in your case, where it focuses solely on what facts are available. There are certainly some cases where an inmate will be requesting funds to develop both prejudice and deficiency, both prong 2 and prong 1. That is not our case. In our case, the record for deficiency is fully developed. And it will often be the case that the record on deficiency is fully developed in the motion, because the deficiency is the thing that should be evident from trial counsel's files and all the information that Federal Habeas Counsel has available to her. Sotomayor, do you think that that includes an attorney that's not the facts of your case? I know that in your case, the defendant himself, to the first investigator who interviewed him, said he had had head traumas and some dependency. And by the time the request for investigative services came about, he had already had a schizophrenic episode. But how about a case where there's no evidence whatsoever of dependency and or of any mental illness, mental challenges, whatever you want to call it? Can an attorney come in and say, it is common practice to do this, so I want to do it anyway, even though there is no suggestion in the record that this is a fruitful inquiry? The answer, unfortunately, is it depends. So in a case like ours where there's also no social history, something that this Court has said has to be performed in absolutely every single case, then, yes, the attorney can come into Federal court and say, without any evidence of red flags, and they can say, look, they just didn't do a social history, that's deficiency, and should be able to get funds to look for what the prejudice from that is. Now, there are other cases, however, where trial counsel might have performed a social history, might have done some mitigation, and if trial counsel can't show up and explain what the deficiency is and identify what red flags that trial counsel didn't follow up on and can't provide a coherent explanation for why they need resources to go look for those flags, then a trial court would be within its discretion to deny the resources. I have a separate jurisdictional problem that I'm hoping you can help me with, and it concerns a COA requirement. And neither side discusses it, but it's jurisdictional, so I feel like I should give you a shot at it, and you can help me out with it. The Fifth Circuit didn't require a COA because it read Harbison as saying one wasn't required. But some circuits, including my own one, have distinguished Harbison in similar circumstances, pointing out that Harbison just dealt with the appointment, I believe, of clemency counsel, and the issue wasn't part of the final order in the merits of the habeas petition. Here, the denial of funding was part of the final order in the denial of a habeas petition. And as I read 2253, the final order in a habeas proceeding, you need a COA. Now, maybe you can say it's just independent and totally separate from that. But then that might suggest you'd have to be able to appeal as a matter of right any time a funding denial takes place, even before final judgment. And that seems odd, too, though, because funding requests, attorney fee denials, sanctions usually are wrapped up in and merged with the final judgment. So long-winded question, but it's jurisdictional, so I thought you could help me out with that. Sure. So we're appealing the judgment, and the determination on 3599 is part of the judgment. We're not appealing the underlying disposition of the claims because those claims haven't been developed. Sure, but you're appealing the final order in a habeas proceeding, and that's the language in 2253. So help me out with the language in 2253. Well, I take the language – I'm appealing some – I'm appealing a determination that was made part of the final order as well, but I'm not appealing the disposition. In a habeas proceeding, right? It's in a habeas – it's in a habeas proceeding, but it's also a proceeding under 3599, so – and there's no COA requirement for that. You know, there are lots of collateral, you know, orders that are issued in habeas proceedings that I don't think are subject to COA requirements. A COAN issue, you'd say, and we have collateral – you know, it's a collateral issue, and so we can take it up before final judgment in the habeas proceeding? I'm saying it's a collateral order. I'm not saying it's an exception to the collateral order doctrine in the sense that there's an interlocutory appeal from it. I've never heard of this animal before. It's collateral, but it still merges to the final order? Well, it's – in the same way that if you denied a hearing without deciding the merits of the claim, I don't necessarily know that that would be subject to the COA requirement. I mean, it's a different – Deny evidentiary hearing or a discovery ruling, it all merges into the final order. Traditionally, that's my understanding. I want to walk back the evidentiary hearing example. If I deny – I would, too. If I deny discovery in a case or I deny something that just prevents the claim from even being presented, the premise behind 2253 is that you can take a rough cut, a first look at the claim, and see if it is – it's got some merit. And that's why, you know, we have the substantiality requirement, and that's why it refers expressly to the merit of the claim. In situations where you're dealing with a procedure that prevents you from even generating that information, the COA requirement doesn't apply, and it's not – I mean, look, suppose it is the case that we're technically speaking correctly, listening to what you've done, and it is an appeal from a final habeas order, right? We granted the petition for cert in order to decide whether the circuit is correct in using the words »substantially necessary« instead of »reasonably necessary«, right? Well, there are cases in which we have done just that, we've decided the issue we granted on, and then we've said, and if they needed a COA, this opinion suggests, indeed, requires that they should have granted one. Okay? And then we don't have to deal with that. And if we did that, would that violate something? Fisherman, not to my knowledge. Breyer, you're okay with that? You like that Justice Breyer's proposal? Fisherman, Justice Gorsuch, I do, yes. Okay. All right. Well, picking up on what Justice Breyer just said, and trying this one last time, I thought the issue that we had agreed to decide was whether the Fifth Circuit's formulation of »substantial need« is different from »reasonably necessary«, which is the statutory standard. And I still don't understand what the difference is between those two formulations. It seems possibly like just a matter of words. So explain to me what is the difference between those two formulations. The reasonable necessity determination starts — is a construct that starts with thinking about what a reasonable lawyer would do. Right. Would a reasonable lawyer think it's necessary? And every evaluation of merit or whether the evidence is helpful for the case starts from the perspective of a reasonable lawyer. Right. The substantial need test has — wants nothing to do with that construct. Why? I mean, if you have — if it's a reasonable attorney, you know, reasonably necessary, would a reasonable attorney think there was a substantial need for it? A reasonable attorney would — when a reasonable attorney thinks there's a substantial need for — as the Fifth Circuit defines it, then they would, of course, seek the evidence. The problem is that a reasonable attorney will also seek evidence in situations that the Fifth Circuit does not define as a substantial need, such as a situation where it's before — where it's before the petition has even been filed. It just — it seems to me like you're not really arguing the question that we granted. What you're saying is that if we take a look at everything that the Fifth Circuit's been doing in this area, in lots of cases that are not before us, it's not doing the right thing. That seems to be your argument, not that there really is a difference between these two verbal formulations. Justice Sleet, I'm going to answer your question, and I'd like to reserve the rest of my time for rebuttal. What the Fifth Circuit did in our case that it is not supposed to be able to do is speculate about the record on prejudice, which is the claim with two elements that I — you know, that I discussed. The evidence is developed on element A, and they're speculating as to what the record is going to look like on B, and that's what they can't do, because reasonable attorneys don't take a fatalistic view towards evidence they don't understand yet. If relief is still available in light of everything else in the case.  Roberts, Thank you, counsel. Mr. Keller. Keller, Thank you, Mr. Chief Justice, and may it please the Court. There is no meaningful difference between reasonably necessary and substantial need. But before that, a predicate issue, there is no jurisdiction here, because CJA funding is an administrative claim for Federal money. It is not a claim against the State. It is not a claim against the State for money. There is not concrete adverseness here. And so where do you go if a circuit is arbitrarily and capriciously saying, I'm going to give any funds, period. You're going to tell me that won't happen, but during the financial crisis not so long ago, they had a reason. But whether that takes care of your right to counsel and counsel that has the resources to do the work necessary to represent you is a different question, a constitutional question. So what happens in that situation? Where does the defendant go? Keller, The statutory system that Congress put in place says there is only review when funding has been granted at a level of more than $7,500. And if you're asking, is there a private right of action here to go get Federal money under the statute, there is nothing in the statute that evinces that. But regardless, this is a claim for Federal money for U.S. Treasury funds. Sotomayor, By the way, in which ways is this outside of the judicial branch? I mean, I understand our prior cases where we were asked to review a claim, and it then went to the Secretary of the Treasury, who had absolute discretion to grant the claim or not. That went outside the judiciary. But how does this go outside the judiciary? Keller, Not everything that a Federal district judge is assigned to do is an act of judicial power. We know that from Ferreira, for instance. Sotomayor, Well, we also know that those things don't get records made. But here, this is required by statute to be put to be made a part of the record. Keller, For potential concessions. But I think looking at the single circuit judge. Sotomayor, Potential what? You put things to be on the record? If there are potential concessions made during the ex parte hearing or proceeding that then could be used on the merits, then that would be the reason why. Breyer, The statute says, upon a finding that investigative experts, da, da, da, are reasonably necessary for the representation of the defendant, da, da, da, da, the court may authorize the defendant's attorneys to obtain such services. It says the court, the judge, the judge may authorize. All right? They say the judge should authorize, and this is the standard, and you say, no, that's not the standard. The standard or it's the same, do some other way. But in either case, it is a judge who is performing a duty that is imposed upon him by a statute. Why isn't that the end of it? We review matters of appointing attorney's fees and paying for them. There can be all kinds of things that judges are authorized by statute to do as part of their judicial duties. I really don't see, and the cases that you cite are all cases saying basically that there is a lot of discretion in the judge to decide how much, which I agree with, but this is an unusual jurisdictional argument. I'm not sure you can separate the amount of funding, though, from whether an investigator is assigned. Here, we're not arguing that counsel or the investigator categorically lacks power under the CJA. Their investigator has started to perform the investigation that they seek to do. This is about a claim for Federal funding, and I think the procedure for single circuit judge review. Ginsburg. Is there any administrative review of a no-funding decision? No, there isn't. The review is concerns the amount of the funds. And here, it strikes me that what we're dealing with is a simple question of statutory interpretation. What does 133599F require counsel to show to get funds for investigating the existence of a mitigation case? That sounds to me like a legal question, the kind of question that is fit for a court, not an administrative review. But Murray's lessee says that an inquiry into the existence of facts and the application of them to rules of law is not enough to have an exercise of judicial power. Here, this can be revised outside the judicial hierarchy. Breyer. That's true. What you say is true. The question is, is the judge performing a judicial duty? And the statute says he is. It's in with other statutes that talk about his judicial duties, and it would seem that making certain that a defendant has an expert where necessary is part of an ordinary judicial duty. I mean, can you think of Murray's lessee is the best you could do, at least in my own mind, that's quite a different matter. It was asking judges to award pensions or something like that, I think. But that's a – is there anything else you have going for you at the moment? Obviously, I'm skeptical of your argument, but go ahead. And I'll try to fix that, Justice Breyer. This can be revised outside the traditional judicial hierarchy. The single circuit judge review point is key here. What happens is the district judge sends a memo to the circuit judge. There's no party involvement in any of that review. In no sense is that an adversary proceeding, and yet that's the proceeding that Congress has created. Indeed, there would be constitutional issues with that proceeding. Ginsburg. Is there any instance of such a review, district judge sends a note where the district judge says, circuit judge, I'm giving nothing. Not one penny. Is there any such procedure existing? Are in all the cases, cases where the district judge says, circuit judge, I've given this much. Do you think it's too much? Do you think it's too little? Burschel, The system that Congress created, they were worried about spending too much money. They did not create a mechanism for review when funds were denied. The Tenth Circuit has said that – and multiple Federal judges have advocated placing these benefits-granting duties with officers besides judges. That could not be an exercise of judicial power. If I can turn now to the – Kagan. Well, Mr. Kelly, if I could just – I mean, suppose – this is the kind of language which routinely gives rise to circuit splits. You know, one circuit interprets it one way, and a second another way, and a third another way, and it can go on and on. And you're essentially saying that we have no way to decide which standard is the standard that Congress meant when it said this. So another circuit tomorrow could say, you know, we're just not giving any funds for any mitigation investigations at all under this standard, and we would be like, whatever. Burschel, Whether administrative agencies, though, are using or applying a certain rule of law, though, is not the test for whether there's judicial power. There would be extremely anomalous results here to allow a potential two-track appeal. The Seventh and Eighth Circuits have said you can't take an appeal from that single circuit judge determination, and that's correct. But that would mean that if the district judge denies funding at the outset, you do get to take an appeal of that. But if a circuit judge is revising that certification award, then there would not be an appeal. Also – Ginsburg. It's not that award. It's – one case is you don't get funding. That doesn't go to a circuit judge. There's no competing – there's no two-track anything. If the judge says nothing, I'm not giving you the funds to investigate, the only place that that can go is to a court of appeals. Burschel, That's correct. But whether a district judge is granting or denying funds, Article III judicial power can't turn on that, that all of a sudden it becomes judicial power when the funds are being denied. If I can turn to the question presented in the issue of Section 2254e2, it is not going to be reasonably necessary to pursue any evidence outside the State court record of trial counsel's performance, because AEDPA in Section 2254e2 is going to bar that evidence. What about the argument that you forfeited – you forfeited the AEDPA argument by not urging it in the Fifth Circuit? We did not forfeit it. First of all, it answers the question presented. The Fifth Circuit did not err because this goes to whether it's reasonably necessary, and that is an issue that both sides have been joined on throughout. And we can't waive arguments. We can only waive issues. Sotomayor, I'm sorry. The Fifth Circuit didn't rely on that ground. Neither have you below. So we reach out to a totally new question in which there's no circuit split and answer that question? Well, this Court, of course, could narrow its analysis and not decide that issue. Petitioners conceded, though, that this point remains open. And it is absolutely necessary to also – Well, I'm not sure it's open after Martinez and Trevino, given the nature of our language in those decisions. But that's a merits issue on the question. But having said that, why do we reach it? The reason that you should reach it here is because in asking can a circuit do a preliminary merits analysis, it has to account for the limits of habeas review. And if it is the case that E-2 is going to bar this evidence, and it does, then there's no reason to continue to fund an investigation to raise evidence that cannot possibly be presented to the public. Breyer. Maybe, but they may have to go to – maybe they have to exhaust – maybe they haven't exhausted on this point. I mean, I don't know. In the first sentence of what the language you're quoting does, it's kind of – it's an exhaustion requirement. And so they'll go and exhaust. Now, that isn't what we took this case to decide is what everybody's told you. So proceed if you want on this thing, but at some point I'd love to hear your point in answer to what he said on the issue we did say we would take. Definitely. When you want, you don't have to now. No, no, that's right. The Court, of course, can, in answering the question presented, though, take account of the fact that there are habeas limitations inherent here. Essentially, Petitioner has now conceded that it is permitted to do a preliminary merits analysis in considering 3599-F funding, whether you call it a plausible analysis or would a reasonable attorney with finite means spend money on it. A reasonable attorney with finite means is going to look at is this claim barred, is it speculative, is the evidence that I would attempt to get into the record, is it duplicative. Those are the three elements of the substantial need formulation that the Fifth Circuit has used, and that is completely correct. I understand that point, which is the end result of which is that it seems to me that you can make all of your arguments under the guise of the test that the Petitioner I have something of the same problem that Justice Alito has. I don't see that it would be terribly valuable for us to spend a time trying to figure out is reasonable necessary, is that the same as substantial need or not, and even if we come out and say one or the other, I don't know that it's going to get to the heart of the question, which is what exactly is a district court judge supposed to do. So why — what's wrong with asking when a reasonable attorney working with finite resources would devote resources to that service? Mr. Chief Justice, there's nothing wrong with that, provided that the Court does clarify that you could do a preliminary merits analysis, that you can account for the underlying nature of the representation, the limits on habeas. Even the Fourth and Sixth Circuits, which purported to create a circuit split with the Fifth Circuit, analyzed is this a substantial question. So the circuits are going to be the same. Ginsburg. If a reasonable attorney asked for funds to investigate, that, you think, would be — that's the test. Provided that there would be an analysis, a preliminary analysis of the merits that accounts for limitations that AEDPA and other doctrines such as Martinez, if it would apply, actually impose on the representation. Kagan. Kagan.             Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. And it's unreasonable for me to make a judgment about what you're going to find in your investigation because that's the whole point of an investigation. But I do know that here no social history was done at all and you've got, like, a schizophrenic defendant, somebody who has had a mental health diagnosis of a very serious order. Well, of course that's the kind of thing that a reasonable attorney would investigate in determining how to spend their limited resources, isn't it? Well, in here, counsel wanted to contact the Petitioner's Honduran family members, but Petitioner himself said don't do that. Petitioner relented just days before the trial. But putting aside whether those particular witnesses and what cross, you know, whether the – I mean, just even putting those people aside. I mean, go and figure out whether there's a history of mental health issues. Well, in this case, the trial investigator and trial counsel obtained records from the State, all of the mental illness records post-State trial. The schizophrenia diagnosis is not years after trial. Yes, but I know, but, you know, if you have a person who has since the incident in question been diagnosed as schizophrenic, you know, some bell goes off that says, I think maybe we should do some investigation and try to figure out whether he was diagnosed with mental health issues at the time of the incident. Well, and counsel wanted to contact the family members, and in 1995, Petitioner himself denied having any health problems, such as drug, alcohol, or mental health. I mean, what better purposes would you spend this money on? It seems to me in this case, it's like the only thing you want to spend your money on is a mitigation investigation. There's nothing else, really, to spend your money on. Well, in here, funds were approved for the trial investigator to do an investigation, contact different witnesses. That happened. When Petitioner's counsel and the investigator wanted to contact the family members, who would have been in a position to try to give some indication of social safety. Ginsburg-Gilbert, but there are many, many sources other than asking family members if you're looking into mental health. There's school records, there's criminal justice records. You don't stop with the family's, the family doesn't want to, or he doesn't want his family to be called. And counsel did obtain records. This is not a case like Rompia or Porter, where there was just a file of information sitting there, a treasure trove of information the counsel just had to pick up, or Porter, where there was no attempt whatsoever to go contact potential witnesses. There was no deficient performance here. Ginsburg-Gilbert, what about the specialists at the State habeas, at the State habeas level? Wasn't there a specialist who said, this is what should be done in this case, all of these things should be investigated, and none of them were? There was a State habeas investigator report. This is not in the State court record, but this was presented on Federal habeas. But even then, there was not particular evidence looking back to say, oh, trial counsel knew this piece of evidence, and therefore, this investigation should have done. Rather, this is JA-266. One of the stated purposes of that report was to provide, quote, ammunition, unquote, to get funding. And so the purpose of this report was to provide ammunition, unquote, to get funding. Roberts, you say there was no deficient performance, but the circuit court had to amend its ruling, because it had mistakenly said that there had been an investigation in mental health in 1997 by trial counsel, and it had to withdraw that. Is there – is it fair to say there was no deficient performance or holding on that score by the Fifth Circuit after it reissued its opinion, or did it rely solely on prejudice, at least with respect to trial counsel? It first analyzed the fact – the answer to the question is, the Fifth Circuit opinion can still be read as holding that there was not deficient performance and in the alternative, that there was no prejudice. How? Because what the Fifth Circuit said was it was proper – or there was no error from not contacting the Honduran family members, one, and two, the evidence of mental illness post-dated. But that's contacting the family members, and I'll spot you that. But I'm talking about the mental health issue. How can there have been no deficient performance holding if it withdrew the basis of that holding in its revised opinion? Because, Justice Gorsuch, that was not the only basis for that holding. The Fifth Circuit in the district court also noted that the evidence of mental health issues all post-dated trial. And when you're asking was there deficient performance under Rompea, you're asking about the quantum of evidence known by trial counsel. Sotomayor, how can you justify saying there wasn't deficient trial performance? I mean, I understand all your legal arguments. There were two and a half pages of mitigation evidence. The prosecution gets up and says, this is a perfect guy. There's no history of mental health. There's no mitigation on substance abuse. The prosecutor at trial points to the deficits of mitigation investigation that trial counsel has done. We hear from the investigator that he's hired. He's told to investigate. And less than a month before trial, he starts trying to do things and fails completely, as Justice Ginsburg points out, to do even the basics of investigation, trying to get school records. It had nothing to do with not reaching the parents or not. Not talking to a witness in California where this man lived and worked for a long period of time. Nowhere in Texas, because he had been there for a period of time. All of those things suggest to me deficient performance. You have a lot of legal defenses, but how can you stand here and say that this kind of investigation meets any constitutional standard? Because both counsel and the trial investigator were doing this. This is page 1 and 2 of our brief. The investigator began interviewing Petitioner several times in February 1996, subpoenaed psychological and disciplinary records, made multiple attempts to contact the Honduran family members, contacted several potential witnesses, searched criminal histories, and attempted to obtain deportation records and California records. In other words, this is not a situation where Rompilla and Porter, where there was simply no attempt at trying to provide a defense. Rather, the key feature here, and what this case had been about up until just recently, was the failure to contact the Honduran family members. And that was the gateway through which Petitioner was trying to say that trial counsel could have obtained information that then would have led trial counsel to believe that a mental health or substance abuse investigation should have occurred. Roberts, a question about how the two parts of the statute work. The first says reasonably necessary, and then there's the may question. Now, it would seem to me, I mean, it can work one of two ways. In other words, the discretion that is granted to the district court could go to the question about whether something is reasonably necessary, the sort of things we've been talking about. I mean, maybe it's necessary if you haven't done anything, but maybe if you're saying, well, I think if I asked the parents a third time, maybe they'd give me a different answer. Or is it necessarily a two-step process where the judge has to make a determination, is this reasonably necessary, and if it is, then the district court judge can still deny it because it says may. Which of those do you think is how the statute should be read? It's the second, Mr. Chief Justice, and we know that. Roberts, I was hoping you were going to say the first. Because under the first, it does seem to me that all the stuff we've been talking about, you know, did they get the school records or not, did they talk to this person or not, how much did they do, it strikes me that those are the sorts of things that would be very hard for an appellate court in the normal course to get into. On the other hand, it seems to me there are also things that you could say to the district judge. They do these discretionary rulings all the time. They are much more familiar than we are with how these sorts of mitigation investigations are conducted. So that if the may goes into what's reasonably necessary, it seems to me that makes sense. If, however, you say the statute requires an inquiry, is this reasonably necessary, and then the district court has this unusual power to say, even though it meets the statutory standard, I'm not going to do it. Well, let me clarify my answer in this way. The may language, switching from shall to may, does imbue the district court with more discretion, again, assuming that there is jurisdiction. This would be a case sort of like Alano that we cite at page 45 of our brief, where there, what this Court said is, a court can analyze, is this a serious issue. And that's very close to what the Fifth Circuit did here in asking, is this a substantial need, or the Fourth and Sixth Circuits say, is this a substantial question. And so those would be proper analyses that a district court could do. And if I could also address Justice Gorsuch's question about a certificate of appealability, because I think this dovetails with our jurisdiction argument. Our position is that this is an administrative act, it is not a judicial act. But if we're wrong about that, and this is actually an appeal from an exercise of judicial power, then a certificate of appealability should be required, because it is an appeal from the Federal habeas judge. Ginsburg You're asking us to take up a question in the first instance, which we don't do. There was no discussion of this at all. Roberts What do we do about that? On the one hand, it's jurisdictional. On the other hand, it's not in the question presented. So as Justice Breyer said, maybe we should let the court of appeals deal with that in the first instance. Gannon Given that it's jurisdictional, the argument would have to be reached. And this is not a situation like Harbison, because here it is not simply about a court  Breyer It's jurisdictional and we have to reach it, I think, I can find. Pretty good authority, where it came up before and they didn't issue a COA, but we decided the issue and said, now, you should have issued a COA, too. I may be wrong, but you don't have it in your briefs, they don't have it in their briefs, I don't have it in anything I've looked at yet, but I have it somewhere in the back of my mind, which is sometimes wrong. So I'll look it up. Okay. Breyer That's usually pretty reliable, too. Breyer No, it's not the record. The question, this is reminding me of something, if I'm perhaps overly simple-minded on this. But what it reminds me of is the great argument that used to take place in ad law. You see, if in fact you reverse a fact-finding of a district judge, you're supposed to do it if it's clearly erroneous. You reverse a fact-finding of an administrative ALJ, you're supposed to do it if there isn't substantial evidence in the record. That's what the statute does. That's so Jerome P. Frank, who was a great judge, one day said, my God, I've found it, eureka. I found a case that a judge wouldn't reverse under the first standard, but would or would reverse under the first standard, but wouldn't under the second. But then when I looked at it more closely, I discovered I didn't have that unusual case anyway. See, he thought there was no difference. That spanned a bunch of law reviews that said, yes, there is a difference. Some said yes, some said no. So why don't we just say, look, that's what the statute says. Pick up his standard. All these arguments you've been making may be good, may be bad. Make them to the district court. Okay? End of case. Fifth Circuit, you are to follow the statute. And that's it. Goodbye. And all these other arguments are for the lower court. And if you want, you say that the lower court should take into account all the arguments that it deems relevant and significant. All right? And in that narrow ruling, though, it would be very important for the Court to clarify a few things, and that is, first of all, a preliminary merits analysis is acceptable as Petitioner has conceded. And second of all What would a reasonable lawyer do? And if the reasonable lawyer would make a preliminary analysis, fine. But the standard, I thought you agreed, was, we look at this case. This is a horrendous murder. The only chance in the world that this defendant has is if he can put on a mitigation case and convince one juror he shouldn't get the death penalty. There is nothing else, as Justice Kagan pointed out. But in doing a preliminary merits analysis, the second part of that would also be, what are the inherent limitations on Federal habeas? For instance, if a claim is categorically barred or if the evidence cannot be introduced because 2250-4E2 bars it, those are all things that an attorney would look at in doing a reasonable necessity analysis. Sotomayor, We create a meaningless right in Martinez-Trevino, because that's what you're arguing, which is, it's nice to have a hearing and get past the procedural bar, but all of the things that an effective counsel should have done, and we've now found they weren't. No record has been created. In Martinez-Trevino, we said that that was the failing that we were remedying, the fact that a defendant has not been given one clear chance to fully develop a record and make his claim. Is that your suggestion? No, Martinez will still have force under our argument. Sotomayor, When? A failure to challenge evidence, that was Martinez, correcting a jury instruction. Sotomayor, Trevino was an ineffective assistance of counsel claim. And a terrible strategic decision like Buck v. Davis from last term, all of those are on the State court record. And this Court has already held in Holland v. Jackson and in Williams that attorney negligence is chargeable to the client for purposes of 2250-4E2. That was an interpretation of the statute. Sotomayor, Martinez-Trevino suggesting the very essence of the exception to that rule, which is if you've not been given a chance, a fair chance, to have some court decide your claim, then you haven't been represented. I don't know what is more attorney abandonment than that, to have one fair chance at having a claim reviewed. Martinez said it was creating a narrow exception. It was only over or it was clarifying Coleman in that very narrow instance. And it was not. Kagan, this is the language that Martinez used. Martinez said that these sorts of claims often require investigative work. It said, I'm quoting again, they depend on evidence outside the trial record. So the whole exception that Martinez set out, you know, seems to be premised on the idea that there's an opportunity to develop the factual basis for the IATC claim. Well, nothing in Martinez or Trevino cited to 2254E2. And the Court was only considering the narrow procedural default rules created by the Court. But when Congress is supposed to do this, it often requires investigative work and it depends on evidence outside the trial record. And now you're saying we'll just take a look at this statute and say that, of course, it doesn't allow investigative work or evidence outside the trial record. I mean, this is precisely what we said. But when Congress has a statute that directs what the rule is for new evidence, and Congress was raising the bar after the Keeney decision, which was the cause and prejudice standard, that what Martinez said was this ought not put a significant strain on State resources, but this would in fact provide huge systemic costs on the system if you're going to open up a trial again and take in any new evidence on a claim of trial IAC, which could bring in anything into the record. But that's the 2254E2 issue. The point, though, on the question presented is that those type of considerations are absolutely proper for not only the circuit or the district courts to be analyzing, but what a reasonable attorney would take account of. Alitoso, a reasonable attorney with finite means might devote those finite means to an avenue of investigation that has very, very little chance of success, because there is so much at stake. So I don't understand how that can be the test here, where the statutory language is reasonably necessary. That seems clearly, whatever necessary means, it means some degree of importance. It has to be, the evidence has to be, has to meet some level of importance in order for the standard to be met. I don't see how you can get around it. And to say the test is whether, what would a reasonable attorney with finite means do, it seems to me quite meaningless. Well, and that's right, Justice Alito, because we're in a habeas context. I thought you agreed with that standard. Because we're in a habeas context, the reasonable necessity analysis has to account for the limits on habeas review. Petitioners relied on many non-habeas cases. And what a counsel does at the beginning of a case when there's no record, there has been no trial, that analysis may look very different. But when we're talking about what is reasonably necessary on Federal habeas review that will necessarily account for habeas limitations that have been placed on AEDPA. May I ask you, before the time runs out, I wasn't clear about your position on prejudice. It seems at one point that you were making the point that this murder was so brutal no amount of mitigating evidence would have helped. Are you still making that? Mr. Chief Justice, I see my time has expired, if I may answer. Yes. Justice Ginsburg, we are still arguing that there was no prejudice. And it's not only the brutality of the crime. There was a robbery at gunpoint three days later with a threat to kill the victim's family. There was an admission to wanting to kill accomplices. There was a threat to kill another witness to his confession. And the criminal history that resulted in jail time after violating probation. Roberts. Thank you, counsel. Thank you. Four minutes, Mr. Kowarski. When Federal habeas counsel got this case, they looked at the record and they saw that when invested with the momentous responsibility of explaining to a court why the defendant's moral feedback loop was not such that it should impose the death penalty, the sentencing phase mitigation presentation lasted two minutes. They also saw that there had been no social history performed. They saw that there had been no mental health expert that had examined the defendant and that the trial counsel had failed to follow up on red flags. They saw in the State habeas file that State habeas counsel was told by his investigator nine days after he hired her that the first thing he had to do was a mitigation investigation and a social history, and he didn't do that. And we know that there's a there there because there is a diagnosis of schizophrenia in the record. It is inconceivable that a reasonable attorney, having received this file, getting this case, would do anything other than precisely what Federal habeas counsel did in this case. And the reasonable attorney standard is the right standard because it is the standard that Congress picked. At the time Congress enacted Section 3599, it knew that courts had spent 20 years defining reasonable necessity using a reasonable attorney rule. And it's also the desirable rule because it gives effect to the dominant purpose of the statute, which is to promote parity in representation as between those capable of paying for it and those who aren't. And finally, it's a really good standard because it's workable. It's flexible enough to apply across phases of the capital representation. Courts have 50 years of experience in dealing with it, and it's got meaningful limits. Mr. Chief Justice, I yield the rest of my time. Roberts. Thank you, counsel. The case is submitted.